UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RANDALL WILLIAM CHURCH CORNETT, <br><br> Plaintiff, <br><br> vs. <br><br> DONNA (MENTAL HEALTH), MENTAL HEALTH COUNSELOR AT MINNEHAHA COUNTY JAIL, INDIVIDUAL AND OFFICIAL CAPACITY;  SHERIFF MILSTEAD, MANAGEMENT AT MINNEHAHA COUNTY JAIL, OFFICIAL CAPACITY;  CORRECTIONAL MEDICAL MANAGEMENT AT MINNEHAHA COUNTY JAIL, OFFICIAL CAPACITY; AND ANTHONY HELLAND, DIRECTOR OF OPERATIONS AT MINNEHAHA COUNTY JAIL, INDIVIDUAL AND OFFICIAL CAPACITY; <br><br> Defendants. | 4:25-CV-04162-ECS <br><br><br> OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Randall William Church Cornett, an inmate at the Minnehaha County Jail, filed this pro se civil rights lawsuit.  Doc. 1.  Cornett filed a motion for leave to proceed in forma pauperis and provided his prisoner trust account report.  Docs. 2, 3.  Cornett also moves for appointment of counsel.  Doc. 5.

## I.      Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee."  28

U.S.C. § 1915(b)(1).  The court may accept partial payment of the initial filing fee where appropriate.  Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan."  Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) The average monthly deposits to the prisoner's account; or
(B) The average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Cornett reports an average monthly balance of $5.82 and average monthly deposits of $87.55. Doc. 3 at 1.  Based on this account information, the Court grants Cornett's motion for leave to proceed in forma pauperis, Doc. 2, and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance.  See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

To pay his filing fee, Cornett must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account."  28 U.S.C. § 1915(b)(2).  The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Cornett's institution. Cornett remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background

In Count I of his complaint, Cornett alleges violation of his "[r]ight to medical assistance (mental health or otherwise)[.]" Doc. 1 at 4. He contends that he put in multiple requests for mental health assistance. Id. According to Cornett, he submitted twelve requests in three weeks and stated that it is an emergency. Id. All his requests for mental health assistance were disregarded. Id. In response to his requests, Donna with mental health asked Cornett to watch his language or face disciplinary action.[1] Id. At this point, Cornett contends that suicide became his only option. Id.

Cornett filed exhibits to supplement his complaint. Doc. 6. One exhibit is a grievance Cornett submitted on August 5, 2025, reporting a "mental health emergency[.]" Id. at 1 (emphasis in original omitted). Cornett stated that he had been requesting mental health assistance for almost two weeks and needed help because it is an emergency. Id. In response to Cornett's grievance, Cpl. Knecht stated that "[m]ental health was here this morning. You refused to come out and speak with them." Id. Knecht also noted that Cornett is on the list to see the psychiatric provider and has been informed that it is a four to six week wait. Id. After

---

[1] An exhibit Cornett submitted to supplement his complaint indicates that Cpl. Knecht, who is not named as a defendant, closed a grievance requesting emergency mental health assistance due to derogatory language and stated "[t]his will not be tolerated and will result in disciplinary action if it continues." Doc. 6 at 1.

requesting emergency mental health assistance multiple times, Cornett attempted to hang himself on or about August 5, 2025. Id. at 4–5.

In Count II of his complaint, Cornett contends that defendants violated his right to a "safe environment[.]" Doc. 1 at 5. Another inmate, Joshua Nelson, notified officers on duty at the jail that an inmate was attempting suicide and "hanging off the rail." Id. The officers responded that "it's hard to notice everything all th[e] while doing NOTHING about [Cornett] hanging off the rail until the rope broke." Id.; see also Doc. 6 at 4. Cornett asserts that "there is little to no concern for another life even when hanging off the rail." Doc. 1 at 5. He also contends that "[e]verybody was notified multiple times before [he] felt suicide was [his] only option." Id.; see also Doc. 6 at 5.

Cornett sues Donna, a mental health counselor at the Minnehaha County Jail, in her individual and official capacities and contends that she violated his Eighth Amendment rights by disregarding his requests for mental health assistance. Doc. 1 at 2. He sues Sheriff Milstead, whom he describes as "management" at the Minnehaha County Jail, in his official capacity. Id. According to Cornett, Sheriff Milstead "[l]eft [him] hanging off the rail when an inmate tried to notify them of the suicide attempt[.]" Id. Cornett also names Correctional Medical Management at the Minnehaha County Jail in its official capacity because of "[b]latant disregard to Mental health pleas for help." Id. Finally, Cornett sues Anthony Helland, the director of operations at the Minnehaha County Jail, in his individual and official capacities and alleges that he denied Cornett's requests to see an "official" psychiatrist and forced Cornett to wait four to six weeks for mental health assistance. Id.

As relief, Cornett requests that all current charges be dropped as his "innocence is partial reason to the suicide attempt." Id. at 7. He requests that all South Dakota fines and court costs

4

be paid in full.  Id.  He wants Donna from mental health to be fired.  Id.  He seeks "[p]roper

mental health care for facility 24/7."  Id.  Finally, he requests monetary damages in the amount

of $300,000 for pain and suffering.  Id.

B.      Legal Standard

The court must assume as true all facts well pleaded in the complaint when screening

under 28 U.S.C. § 1915A.  Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995).  Civil

rights and pro se complaints must be liberally construed.  Erickson v. Pardus, 551 U.S. 89, 94

(2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004).  Even with

this construction, "a pro se complaint must contain specific facts supporting its conclusions."

Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City

of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).  Civil rights complaints

cannot be merely conclusory.  Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam)

(citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  If it does not

contain these bare essentials, dismissal is appropriate.  Beavers v. Lockhart, 755 F.2d 657, 663

(8th Cir. 1985).  Twombly requires that a complaint's factual allegations must be "enough to

raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true[.]"  Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v.

Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain

either direct or inferential allegations regarding all material elements necessary to sustain

recovery under some viable legal theory (citation omitted)).  Under 28 U.S.C. § 1915A, the court

5

must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This court will now assess Cornett's claims under 28 U.S.C. § 1915A.

### C.      Legal Analysis

#### 1.      Count I – Failure to Provide Adequate Mental Health Care

Liberally construing Cornett's complaint, he asserts a claim for deliberate indifference to a serious health need in violation of his rights under the Eighth Amendment. See Doc. 1 at 2, 4. As part of his request for relief, Cornett seeks dismissal of all current charges. Id. at 7. Thus, the Court assumes that Cornett was a pretrial detainee at the time the conduct alleged in his complaint occurred. A pretrial detainee's claims for inadequate medical care are analyzed under the Fourteenth Amendment's due process protections, rather than the Eighth Amendment. Davis v. Hall, 992 F.2d at 152. Because the Eighth Circuit has not established a different standard for this analysis, Cornett's deliberate indifference claims under the Fourteenth Amendment may be examined under the same deliberate indifference standard as Eighth Amendment claims by convicted prisoners. Id. at 152–53.

As the Court understands Cornett's complaint, he brings his failure to provide adequate mental health care claim (Count I) against Donna, a mental health counselor at the Minnehaha Jail in her individual and official capacities; Correctional Medical Management;[2] and Anthony Helland, director of operations at the Minnehaha County, in his individual and official capacities. Doc. 1 at 2.

---

[2] Although Cornett's complaint does not specifically so state, the Court is aware that Correctional Medical Management is a private company that has contracted with Minnehaha County to provide medical services at the Minnehaha County Jail.

6

### a.      Claims Against Correctional Medical Management

It is not clear whether Cornett alleges that Donna, a mental health counselor at the Minnehaha County Jail, and Helland, the director of operations at the Minnehaha County Jail are employees of Correctional Medical Management (CMM) or Minnehaha County.  See Doc. 1 at 2.  For the sake of completeness, the Court will liberally construe Cornett's complaint and analyze both possible scenarios.  Because official capacity claims are construed as claims against the individual's employer, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999), the Court analyzes Cornett's official capacity claims against any CMM employees together with Cornett's claims against CMM.  Under § 1983, a corporation cannot be held vicariously liable for the acts of its employees.  Burke v. N.D. Dep't of Corr. & Rehab., 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (citing Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975–76 (8th Cir. 1993)).  "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies.  The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983."  Sanders, 984 F.2d at 975–76 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 694 (1978)).  "To support a claim against a corporation acting under color of state law, plaintiff 'must show that there was a policy, custom, or official action that inflicted an actionable injury.'"  Phillips v. Rose, No. 4:23-CV-00825-JSD, 2023 WL 5748434, at *6 (E.D. Mo. Sept. 6, 2023) (quoting Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006)).

"[T]o prove a policy, custom or action, [the plaintiff] must show 'a continuing, widespread, persistent pattern of unconstitutional misconduct'" by the corporation's employees. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (quoting S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1028 (8th Cir. 2002)).  A § 1983 complaint

need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Id. (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Cornett's complaint does not allege any facts inferring that the alleged disregard of his mental health needs is the result of an unconstitutional CMM policy or custom. See generally Doc. 1. Thus, Cornett's claims alleging that CMM is liable for violating his constitutional rights are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1) for failure to state a claim upon which can be granted. To the extent Donna and Helland are employees of CMM, Cornett's claims against them in their official capacities are also dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1) for failure to state a claim upon which can be granted.

### b.      Official Capacity Claims Against Minnehaha County Employees for Money Damages

If Donna, a mental health counselor at the Minnehaha County Jail, and Helland, the director of operations at the Minnehaha County Jail, are employees of Minnehaha County rather than CMM, the Court must consider whether Cornett can recover monetary damages against them in their official capacities. Because official capacity claims are construed as claims against the individual's employer, Johnson, 172 F.3d at 535, this Court evaluates Cornett's official capacity claims as claims against Minnehaha County. See also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987) ("A § 1983 action against a government official in his official capacity . . .

8

is *not* a suit against the official personally, for the real party in interest is the entity." (internal citations omitted)).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay, 815 F.2d at 1170 (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation[]" in order for that entity to be liable under § 1983). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson, 388 F.3d at 591 (citation omitted). But the complaint must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

To establish local governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Indep., 829 F.3d 695, 700 (8th Cir. 2016)).

Cornett does not allege any facts indicating that any actions by any Minnehaha County employee were taken in accordance with an unconstitutional policy. See generally Doc. 1.

Liberally construing Cornett's complaint, he alleges that he submitted multiple requests for emergency mental health assistance during a short time, all of which were disregarded. Id. at 4. At screening, these allegations are likely sufficient to allege a "a continuing, widespread, persistent pattern of unconstitutional misconduct" by Minnehaha County employees, but to establish that Minnehaha County is liable because of an unofficial custom, Cornett must also allege that Minnehaha County's policymaking officials received notice that Cornett's multiple requests for emergency mental health assistance had been disregarded by Minnehaha County employees. See Brewington, 902 F.3d at 801. Because Cornett's complaint does not allege any facts indicating that a Minnehaha County policymaking official received notice that his multiple requests for emergency mental health assistance had been disregarded, he has not alleged an unofficial unconstitutional custom. Thus, Cornett's official capacity claims against Donna and Helland are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c. Individual Capacity Claims and Official Capacity Claims for Injunctive Relief

### Claims for Injunctive Relief

It appears to the Court that Cornett's complaint seeks three forms of injunctive relief: (1) that all current criminal charges against him be dropped and that all South Dakota fines and court costs be paid in full; (2) that Donna from mental health be fired; and (3) that the Court order 24/7 "proper" mental health care at the Minnehaha County Jail. Doc. 1 at 7. The Court begins it analysis of Cornett's claims for injunctive relief by considering whether it has authority to enter injunctive relief of the nature Cornett requests.

In this action under 42 U.S.C. § 1983, this Court does not have authority to order dismissal of pending state court criminal charges or the forgiveness or payment of any associated

fines and court costs.  "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."  United States v. Batchelder, 442 U.S. 114, 124 (1979); see also Smith v. Powers, No. C 98–1832 CAL(PR), 1998 WL 355818, at *1 (N.D. Cal. June 18, 1998) ("Whether to prosecute and what criminal charges to file or bring are decisions that generally rest in the prosecutor's, not the court's, discretion."); Petitphait v. Christensen, No. 8:12CV45, 2012 WL 1015288, at *1–2, (D. Neb. Mar. 26, 2012) (holding that a civil rights plaintiff may not challenge a pending or future criminal charge in an action brought pursuant to 42 U.S.C. § 1983).

Similarly, in this action under 42 U.S.C. § 1983, this Court does not have authority to direct that any employee be terminated.  Lightfeather v. Blue, No. 8:22CV247, 2024 WL 4391864, at *4 (D. Neb. Oct. 3, 2024) ("[T]his Court is unaware of any authority that would grant a federal court the power to force a County to fire one of its employees."); Johnson v. MCF – St. Cloud, No. 22-CV-1299 (JRT/BRT), 2022 WL 17723807, at *6 (D. Minn. Nov. 10, 2022) ("Courts do not have authority to terminate the employment of individual Defendants."), report and recommendation adopted by 2022 WL 17721510 (D. Minn. Dec. 15, 2022); Cranford v. Eyiuche, No. 1:16-CV-00783-GSA-PC, 2018 WL 3348736, at *3 (E.D. Cal. July 9, 2018) (stating that plaintiff's request that the court revoke the license and terminate the employment of a nurse who allegedly refused to treat her "is a frivolous demand for injunctive relief, because the court does not have the authority to grant this type of relief under § 1983.");

For these reasons, Cornett's requests that this Court order dismissal of pending state court criminal charges or the forgiveness or payment of any associated fines and court costs or order the termination of any employee are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

While Cornett's request that the Court order "proper" 24/7 medical care at the Minnehaha County may be broad, in general, if Cornett can establish deliberate indifference to a serious medical need, this Court has authority to order prospective injunctive relief to remedy a constitutional violation, provided, of course, that Cornett meets the prerequisite requirements for injunctive relief and that the scope of the requested relief is in accordance with 18 U.S.C. § 3626.

**Individual Capacity Claims**

Claims based on vicarious liability are not cognizable under 42 U.S.C. § 1983. Marsh v. Phelps Cnty., 902 F.3d 745, 754 (8th Cir. 2018). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)); Jones v. City of St. Louis, 104 F.4th 1043, 1050 (8th Cir. 2024). In other words,

> each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citation modified). Here, Cornett brings claims against Donna and Helland in their individual capacities. Doc. 1 at 2. Thus, he must allege that each of them either directly participated in the alleged unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

Although Cornett alleges that Helland is the director of operations at the Minnehaha County Jail, he has not alleged sufficient facts to state a claim against Helland for failure to train or supervise. See Davis v. Buchanan Cnty., 11 F.4th 604, 624 (8th Cir. 2021) ("A supervisor may be liable under section 1983 if their 'failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" (quoting Andrews v. Fowler, 98 F.3d

12

1069, 1078 (8th Cir. 1996)).  When a supervisor's liability is premised on the supervisor's failure to train or supervise, as opposed to direct participation, the plaintiff must show that the supervisor "(1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts."  Id. (quoting S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015)).  "Allegations of generalized notice are insufficient[,]" Krigbaum, 808 F.3d at 340, and a supervisor's "mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983[,]" Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994) (citation omitted).  Cornett's complaint does not allege any facts that, if proven, establish that Helland received notice of a pattern of unconstitutional acts committed by his subordinate.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Id. at 104–05 (footnotes omitted).  "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Id. at 105.  "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Id. at 106.  Allegations of negligence will not suffice, nor will "mere disagreement with treatment decisions."  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes "both an objective and a subjective component." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "The plaintiff[] must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). An objectively serious medical need is one that has either been diagnosed by a physician as requiring treatment or is so obvious that even a layperson would recognize the need for medical attention. Dantzler v. Baldwin, 133 F.4th 833, 843 (8th Cir. 2025) (citation omitted). At the screening stage, Cornett has alleged sufficient facts to meet the objective prong. Although he does not allege that he had been diagnosed with a specific mental health condition that requires treatment, he alleges that he was experiencing a mental health emergency. Doc. 1 at 4; Doc. 6 at 1. Accepting these allegations as true, Cornett has alleged a condition so obvious that a layperson would recognize the need for professional assistance.

To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (8th Cir. 1994). Deliberate indifference requires a mental state equal to criminal recklessness, Dantzler, 133 F.4th at 843 (citation omitted0, but this mental state can be inferred where's an officer's response to a known risk is "obviously inadequate." Barton v. Taber, 820 F.3d 958, 965 (8th Cir. 2016) (quoting Thompson v. King, 730 F.3d 742, 747 (8th Cir. 2013)).

Beginning with Cornett's claims against Donna, Cornett has pled enough facts to satisfy the second prong. Cornett's alleges that instead of taking action in response to Cornett's repeated requests for emergency mental health assistance, Donna "asked [him] to watch [his]

14

language or face disciplinary action." Doc. 1 at 4. Therefore, Cornett's Fourteenth Amendment deliberate indifference claim against Donna in her individual capacity for monetary damages and official capacity for injunctive relief survives § 1915A screening.

Although Cornett's has not plausibly alleged that Helland is liable for failure to properly train or supervise, he has alleged that Helland was personally involved in the denial of professional mental health assistance. See id. at 2 (alleging that Helland "[d]enied to see official psychiatrist as well as FORCED [Cornett] to wait 4-6 weeks for mental health assistance."). The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[] or delay[] access to medical care[.]" Estelle, 429 U.S. at 104–05. When a prisoner alleges deliberate indifference based on a delay in providing medical treatment, the prisoner "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Jackson v. Riebold, 815 F. 3d 1114, 1119–20 (8th Cir. 2016) (citation modified). At this stage, Cornett has not introduced verifying medical evidence, but he has plausibly alleged that the delay in responding to his requests for mental health treatment led to his attempted suicide. Doc. 1 at 4. Thus, Cornett's Fourteenth Amendment deliberate indifference claim against Helland in his individual capacity for money damages and official capacity for injunctive relief only survives § 1915A screening.

### 2.    Count II – Failure to Protect

In Count II of his complaint, Cornett alleges that defendants violated his constitutional right to a "[s]afe environment." Doc. 1 at 5. The Court liberally construes Count II of Cornett's complaint to allege a failure-to-protect claim. "[T]he Eighth Amendment . . . imposes upon jailers an obligation to protect inmates from more generalized harms such as assault by other inmates."

15

Hott v. Hennepin Cnty., 260 F.3d 901, 906 (8th Cir. 2001).[3]  To state a viable failure-to-protect

claim, a plaintiff must demonstrate that the defendant was deliberately indifferent to a substantial

risk of serious harm.  Id.  "[I]t does not matter . . . whether a prisoner faces an excessive risk of

attack for reasons personal to him or because all prisoners in his situation face such a risk."  Doe

v. Washington Cnty., 150 F.3d 920, 923 (8th Cir. 1998) (citation modified).

Cornett alleges that another inmate notified jailers that Cornett had attempted suicide and

"was hanging off the rail."  Doc. 1 at 5.  According to Cornett, the jailers stated, "it's hard to

notice everything" and did nothing about him hanging off the rail until the rope broke.  Id.

Cornett does not identify the jailers or name any jailers as defendants.  See generally Doc. 1.  As

the Court understands Cornett's complaint, Sheriff Milstead, in his official capacity, is the only

defendant named in Count II.  Id. at 2.  Because Cornett identifies Sheriff Milstead as

"management" at the Minnehaha County Jail and alleges that he "[l]eft [him] hanging off the rail

when an inmate tried to notify them of the suicide attempt[,]" Cornett appears to be alleging that

Sheriff Milstead is vicariously liable for the conduct of the unidentified, unnamed jailers.  Id. at

2, 5.  But vicarious liability claims are not cognizable under 42 U.S.C. § 1983.  Marsh, 902 F.3d

at 754.  Supervisors may be liable in their individual capacities under § 1983 for failure to train

or supervise, see Parrish, 594 F.3d at 1001, but Cornett did not sue Milstead in his individual

capacity.  Cornett sues Milstead in his official capacity only, Doc. 1 at 2, which is considered to

be a claim against Minnehaha County.  Clay, 815 F.2d at 1170.

---

[3] In Hott, the Eighth Circuit considered a failure-to-protect claim arising out of a pretrial
detainee's suicide and applied the Eighth Amendment deliberate indifference standard, but
acknowledged that a pre-trial detainee's rights stem from the Fourteenth Amendment instead of
the Eighth Amendment.  260 F.3d at 905; see also Leftwich ex rel. Leftwich v. Cnty. of Dakota,
9 F.4th 966, 972 n.4 (8th Cir. 2021).

To establish a claim against Minnehaha County, Cornett must show that the alleged constitutional violation resulted from an official county policy or an unofficial custom. Kiefer v. Isanti Cnty., 71 F.4th 1149, 1152 (8th Cir. 2023). Under § 1983, "policy" refers to "an official policy, a deliberate choice of a guiding principle or procedure made by the [county] official who has final authority regarding such matters." Corwin, 829 F.3d at 700 (internal quotation omitted). An official policy includes actions by its legislative body, Connick v. Thompson, 563 U.S. 51, 61 (2011), and decisions or actions by an employee who has "final policymaking authority" as to "the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion). Here, Cornett does not allege any facts to suggest that Minnehaha County "created, adopted, or supported any policy" that caused the alleged violation of Cornett's constitutional rights. See generally Doc. 1.

"[County] liability may be imposed for a single decision by [county] policymakers[.]" Pembaur, 475 U.S. at 480. But "liability attaches only where the decisionmaker possesses final authority to establish [county] policy with respect to the action ordered." Id. at 481 (footnote omitted); see also Davison v. City of Minneapolis, 490 F.3d 648, 659 (8th Cir. 2007) ("[A]n unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." (citation omitted)). Whether a county official has final policymaking authority is a question of state law. Pembaur, 475 U.S. at 483; see also Kiefer, 71 F.4th at 1153 (stating that "the trial judge . . . must identify 'those individuals . . . who speak with final policymaking authority for the local government.'" (quoting Atkinson v. City of Mountain View, 709 F.3d. 1201, 1214–15 (8th Cir. 2013)).

17

South Dakota vests final policy making authority for the operation of county jails with the county commission.  "County commissions in South Dakota are required by statute to establish and maintain county jails."  City of Rapid City v. Pennington Cnty., 669 N.W.2d 120, 124 (S.D. 2003); see also SDCL § 24-11-2 ("There shall be established and maintained in every county, by authority of the board of county commissioners and at the expense of the county, a jail for the purposes stated in this chapter[.]").  While South Dakota law provides that the "sheriff or other officer designated by law or ordinance shall have charge of the jail[,] . . . [t]he officer in charge of any jail shall conform to in all respects to the policies and procedures required by § 24-11-23."  SDCL § 24-11-13.  SDCL § 24-11-23 requires that the "governing body or commission responsible for the operation of a jail shall adopt written policies and procedures for the regulation" of jail operations.  SDCL § 24-11-23.  Thus, under South Dakota law, final policy making authority for the operation of the Minnehaha County Jail vests with the Minnehaha County Commission.

In addition to an official policy, a county can be liable under § 1983 based on an unconstitutional "custom."  "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a [governmental entity] to liability on the theory that the relevant practice is so widespread as to have the force of law."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (citation omitted).  A governmental entity may be liable if a plaintiff alleges facts establishing that "the alleged misconduct was so pervasive amount the non-policy making employees of the [entity] as to constitute a custom or usage with the force of law."  McGautha v. Jackson Cnty., Mo., Collections Dep't, 36 F.3d 53, 56 (8th Cir. 1994) (citation modified).  A plaintiff must allege facts demonstrating the existence of a "continuing, widespread, persistent pattern" of

18

unconstitutional conduct to state a plausible claim for liability based on custom.  Johnson v.

Douglas Cnty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013) (internal quotation omitted).

Cornett does not allege facts sufficient to show a continuing, widespread, persistent pattern of

unconstitutional conduct.

A county may be found liable under § 1983 for failure to train.  Kiefer, 71 F.4th at 1152.

To establish county liability on a theory of failure to train, a plaintiff must establish:

> (1) [the] County's officer-training practices were inadequate; (2) [the] County was
> deliberately indifferent to the rights of others in adopting these training practices,
> and [the] County's failure to train was a result of deliberate and conscious choices
> it made; and (3) [the] County's alleged training deficiencies caused [plaintiff's]
> constitutional deprivation.

Ulrich v. Pope Cnty., 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted).  In Ulrich, the

Eighth Circuit held that a plaintiff had failed to plead a plausible § 1983 failure to train claim

against Pope County when the allegations in the plaintiff's complaint related only to his isolated

interaction with county officers.  Id. ("Generally, an isolated incident of alleged police

misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating

liability under § 1983." (citation omitted)).  Cornett alleges that "there is little to no concern for

another life even when hanging off the rail."  Doc. 1 at 5.  But he fails to allege any facts to

establish that Minnehaha County's training practices were deliberately different to the

constitutional rights of prisoners in the custody of the Minnehaha County Jail.  See Setchfield v.

St. Charles Cnty., No. 4:21-CV-923 RLW, 2022 WL 579248, at *8 (E.D. Mo. Feb. 25, 2022)

("To plead his theory of liability against the County for its alleged failure to train, Plaintiff relies

on factual allegations that he was unlawfully beaten, detained, and arrested by the Defendant

Officers, and ipso facto, that the County did not properly train these officers.  That is not

enough." (citation omitted)).  For these reasons, Cornett's claims against Sheriff Milstead in his

19

official capacity are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**III**.   **Motion for Appointment of Counsel**

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). "In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claim." Schneider v. Badhand, No. 3:24-CV-03008-ECS, 2024 WL 4615776, at *4 (D.S.D. Oct. 30, 2024 ) (citing Stevens, 146 F.3d at 546). Cornett's surviving claims are not complex, and the Court finds that he is able to investigate the facts and present his claims adequately at this stage of the proceedings. Thus, Cornett's motion for appointment of counsel, Doc. 5, is denied.

**IV.**   **Conclusion**

It is therefore ORDERED:

1.   That Cornett's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

2.   That the Clerk of Court shall send a copy of this order to the appropriate financial official at Cornett's institution.

3.   That the institution having custody of Cornett is directed that whenever the amount in Cornett's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Cornett's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

4.      That Cornett's motion for appointment of counsel, Doc. 5, is denied.

5.      That Cornett's claims against Correctional Medical Management are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

6.      That Cornett's official capacity claims against Donna and Helland for money damages are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7.      That Cornett's claims seeking dismissal of pending state court criminal charges or the forgiveness or payment of any associated fines and court costs or the termination of any employee are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

8.      That Cornett's Fourteenth Amendment deliberate indifference claim against Donna in her individual capacity for monetary damages and official capacity for injunctive relief survives § 1915A screening.

9.      That Cornett's Fourteenth Amendment deliberate indifference claim against Helland in his individual capacity for money damages and official capacity for injunctive relief only survives § 1915A screening.

10.     That Cornett's claims against Sheriff Milstead in his official capacity are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11.     That Cornett's remaining claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

21

12. That the Clerk shall send two blank summons forms and Marshal Service Forms (Form USM–285) to Cornett so that he may cause the complaint to be served upon the defendants, Donna (Mental Health) and Helland.

13. That Cornett shall complete and send the Clerk of Courts a summons and USM– 285 form for each defendant.  Upon receipt of the completed summons and USM– 285 forms, the Clerk of Court will issue the summonses.  If the completed summons and USM–285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

14. That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1; the supplemental exhibits, Doc. 6; and this order, upon the defendants.

15. That the defendants will serve and file an answer or responsive pleading to the complaint and supplement on or before 21 days following the date of service.

16. That Cornett will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED this 29th day of April, 2026.

BY THE COURT:

_____

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

22